UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEOLA SMITH** <br><br> **Plaintiff** <br><br> v. <br><br> **MPD CHIEF CATHY LANIER,** <br> **THE DISTRICT OF COLUMBIA,** <br> *et al.,* <br><br> **Defendants** | Case No. 1:08–cv– 0808 –ESH <br><br><br><br><br> August 15, 2008 |

**PLAINTIFF LEOLA SMITH'S OPPOSITION
TO DEFENDANTS' SUPPLEMENTARY MEMORANDUM
SUPPORTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Leola Smith, through counsel, respectfully files this opposition to Defendants' supplementary memorandum supporting their motion to dismiss. This Court should deny defendants' motion because the officers did violate Ms. Smith's Fourth Amendment rights and are not entitled to qualified immunity.

**Ms. Smith requests a hearing concerning this matter.**

### I. PROCEDURAL POSTURE

On July 31, 2008, your Honor ordered Defendants to file a supplementary motion by August 6, 2008, addressing whether the officers violated Ms. Smith's Fourth Amendment right because they failed to do so in their motion to dismiss.[1]

Your Honor ordered Ms. Smith to submit her opposition by August 15, 2008.

---

[1] A Minute Order dated August 1, 2008, was filed in confirmation of the order given the previous day.

Defendants filed their motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6). However, Defendants attached a copy of the warrant and accompanying affidavit to their memorandum in opposition to Ms. Smith's motion to reinstate. In essence, defendants have converted their motion to dismiss into a motion for summary judgment by attaching documents related to material facts.[2]

## II.  ARGUMENT

**A.  The Officers Violated Ms. Smith's Fourth Amendment Rights.**

The first question to determine if qualified immunity exists is whether an officer violated an individual's constitutional right.

If yes, then, was that right clearly established when the officers acted. Only then can an officer plead qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye violated Ms. Smith's Fourth Amendment right, which guarantees:

> [T]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A private citizen's right to be secure in her person, home, papers and effects is an inherent right and for the government to violate it, there must be sufficient justification.

A law-abiding individual should be able to trust that when she leaves her home for work she will return home and find nothing amiss. Ms. Smith's rights were violated on July 14, 2007,

---

[2] Ms. Smith includes, by reference, all her arguments from her first opposition filed June 27, 2008.

and she has lost trust that her person, home, papers and effects are safe from unreasonable search and seizure.

On July 14, 2007, Ms. Smith's right to be secure in her person, house, papers and effects was violated by MPD officers who ignored the law and executed a facially deficient warrant lacking particularity about the place to search and relying on an attached affidavit clearly lacking indicia of probable cause.

But for an MPD officer's dishonesty or reckless disregard of the truth when drafting the supporting affidavit, Ms. Smith would not have returned home on July 14, 2007, and found her front doors broken, personal effects on the floor, heirlooms destroyed and her house trashed.[3]

But for the actions of the officers and their disregard for her rights, Ms. Smith would not have had to explain to her tenants why their apartment doors were broken and why police officers had invaded their privacy.

In *U.S. v. Leon*, 468 U.S. 897 (1984), the Supreme Court explained four instances when a search warrant, signed by a judge or magistrate and executed by government officers, is invalid:

> (1) if the affiant included information in the affidavit that misled the judge that the affiant knew was false or would have known was false, except for his reckless disregard of the truth;
>
> (2) the issuing judge or magistrate wholly abandoned his or her detached and neutral judicial role;
>
> (3) an officer claimed good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

---

[3] Ms. Smith's nephew, in the house during the search, overheard one police officer tell another, younger officer to dump the contents of a drawer onto the floor, saying, "That's how we do it."

> (4) a warrant is so facially deficient — *i.e.,* failing to particularize the place to search or the things to seize — that the officers could not reasonably presume it to be valid.

*Leon,* 468 U.S. at 922-925.

The warrant in this case falls into three of the *Leon* categories. First, the warrant was facially deficient because it lacked particularity about the place to search, and the officer knew or should have known the deficiency. Second, an officer could not claim good faith reliance on the warrant because the attached affidavit so lacked sufficient indicia of probable cause. Third, Officer Ellingsworth submitted a supporting affidavit he knew or should have known, but for his reckless disregard of the truth, contained false information which misled the judge.

Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye relied on a clearly deficient search warrant. A simple comparison of the description in the warrant to the physical premises establish the deficiencies of the warrant. Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye either intentionally ignored the deficiencies or were so lacking in knowledge of the law and requirements for a search warrant that they searched Ms. Smith's residence and basement apartments.

The warrant states "premises known as 1812 9th Street NW, Washington, DC as described more fully in the Affidavit." A reasonable officer arriving at 1812 9th Street NW would immediately see three distinct entrances to three different residences. A reasonable officer would question which residence the warrant applied to. A reasonable officer would question if the officer requesting the warrant had carried out any independent inspection of the residence to be searched. A reasonable officer would question if the officer requesting the warrant had

determined who resided in the residence. A reasonable officer would question if the officer requesting the warrant had determined who owned the house, or if each apartment was individually owned. A reasonable officer would turn to the attached affidavit for more information.

In turning to the affidavit, the officer would see that the affidavit also failed to indicate the residence to be searched. The affidavit refers to the door on the 9th Street side of the house. However, there are three entrances on the 9th Street side of the house.

An officer executing this warrant could not reasonably presume it to be valid because of its failure to particularize the place to be searched.

The unreasonableness of the police officers' actions is further demonstrated by their invading three separate residences. Despite the deficiencies in the warrant and the supporting affidavit, Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye executed the warrant anyway, in violation of Ms. Smith's Constitutional rights.

Officer Ellingsworth provided Judge Tignor an affidavit Ellingsworth knew contained false information or should have known was false if he had not recklessly disregarded the truth.

It is possible discovery will show other affidavits prepared by Officer Ellingsworth uses the same boilerplate language.

Officer Ellingsworth either lied or disregarded the truth when he described 1812 9th Street NW. Officer Ellingsworth did not state that there were three doors at the front of the house, each with a wrought iron gate in front of the door.

Officer Ellingsworth did not do any information search on the home to identify the owner and/or residents. In fact, Officer Ellingsworth did not take any steps to corroborate any

information in the affidavit. Further, Officer Ellingsworth did not take the affidavit to be reviewed and approved any MPD senior officer. Officer Ellingsworth failed to exhibit any concern about the veracity of his sworn affidavit. This conduct evidences Officer Ellingsworth's total disregard for Ms. Smith's Fourth Amendment right to be free from unreasonable searches.

If Officer Ellingsworth had done any background check on 1812 9th Street NW, he would have known who owned the building, who owned the individual apartments, and who resided in the three residences.

Officer Ellingsworth would have learned and would have known that this house is an historic landmark because it was the former residence of Mary McLeod Bethune (1875-1955), a national pioneer in the education of African-Americans and a famous civil rights activist.

Officer Ellingsworth's statement in the affidavit concerning a Metropolitan Police Department Confidential Informant's (CI) tip and alleged undercover buy is filled with holes, inconsistencies, and perhaps lies.

Officer Ellingsworth did not personally search the CI to determine that the CI had no illegal drugs or U.S. currency before giving the CI marked bills and entering 1812 9th Street NW. Nor does Officer Ellingsworth identify the officer who searched the CI.

Officer Ellingsworth was not in the position to observe the CI allegedly walk into 1812 9th Street NW. Officer Ellingsworth did not identify the officer or officers who did observe the entry and/or buy.

Officer Ellingsworth does not state in his affidavit whether the officers that searched the CI or watched the CI enter 1812 9th Street NW were undercover officers.

Officer Ellingsworth does not state which of the three entrances the CI allegedly entered. Officer Ellingsworth does not include the race, sex or age of the "unknown subject" who allegedly let the CI into the residence.

Officer Ellingsworth does not say that he or any other officer witnessed the CI exchange the marked "MPD funds" for drugs. He does not state the amount of "MPD funds" given to the CI. Officer Ellingsworth put in information concerning the alleged marked "MPD funds" to dress up the affidavit. However, Officer Ellingsworth knew that the likelihood of recovering the "funds" was nil, this rendering the information useless. Officer Ellingsworth was not the officer to whom the CI allegedly handed the crack-cocaine after the alleged purchase. Nor was Officer Ellingsworth the officer who field-tested the substance.

Officer Ellingsworth lacked personal knowledge about anything that happened. His affidavit is replete with holes, half-truths, and inconsistencies. Officer Ellingsworth acted in reckless disregard of the truth.

Defendants have not yet answered Ms. Smith's complaint, and discovery has not begun. Document requests and depositions of Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye can provide the additional facts to support findings that:

1. that the search warrant executed on Ms. Smith's home is invalid because it was facially deficient, because it lacked particularity about the place to be searched, and the officer knew or should have known the deficiency;

2. that the warrant was issued by a judge who was misled by information in the affidavit that affiant Officer Ellingsworth knew or should have known were false but for his reckless disregard of the truth; and

3. that an officer could not claim good faith reliance on the warrant because the attached affidavit was so lacking in indicia of probable cause.

Defendants argue that the search warrant is valid, based on *Leon*. In their memorandum, Defendants state that in *Leon*, the Supreme Court held that:

> ... the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.

(Defendants' Supplemental Memorandum at 3).

The Defendants' reliance on *Leon*, however, is misplaced. This holding involved the admissibility of evidence, not whether the search was legitimate.

Ms. Smith's position is that the officers here could not execute a warrant that was facially deficient, based on an affidavit lacking indicia of probable cause and containing information that misled the judge, which the affiant Ellingsworth either knew was false or would have known was false but for his reckless disregard for the truth.

*Leon* supports Ms. Smith's case because this decision explains the four instances when a judge's issuing a warrant does not negate an officer's violation of an individual's Constitutional right. As explained above, the warrant in this case falls within three of these categories.

In *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), Sheppard challenged a warrant in which the judge made a mistake "making necessary changes" to the warrant the officer gave him. Sheppard claimed that the warrant lacked particularity as to items to be seized. The detective requesting the warrant showed the affidavit to the District Attorney, the District Attorney's first assistant and a sergeant. *Sheppard* 468 U.S. at 985.

The court held that the evidence did not have to be excluded because, while "an error of constitutional dimensions may have been committed with respect to the issuance of the warrant,

... it was the judge, not the police officers, who made the critical mistake." *Sheppard* 468 U.S. at 990.

In that case, the judge made a mistake. In this case, the officers made the mistake. Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye cannot say that the warrant violated Ms. Smith's rights due to Judge Tignor's mistakes.

Officer Ellingsworth submitted the affidavit in support of the warrant. There is no evidence that Officer Ellingsworth submitted the warrant to a senior officer for approval. Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye executed the warrant on Ms. Smith's residence despite glaring inconsistencies in the warrant and affidavit.

In addition, *Sheppard,* like L*eon,* involves the exclusionary rule, which disallows evidence seized in violation of the Fourth Amendment against an individual to be used in court. The "good faith" exceptions to the exclusionary rule exist not to forgive violations of an individual's Fourth Amendment rights, but to avoid hamstringing prosecutors because of police officers' errors.

An individual's right have her person, house, property and effects protected from unreasonable search and seizure is not diminished by *Leon, Sheppard,* or other cases admitting illegally obtained evidence. The officers found nothing they were looking for in Ms. Smith's home and have not charged her with any criminal offense.

Moreover, *Leon* and *Sheppard* are procedurally different from this case. Discovery had already taken place and was closed. There has been no discovery here. Defendants have not even filed an answer.

In *Malley v. Briggs*, 475 U.S. 335, 345 (1986) the court, quoting *Leon,* stated:

> ... our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization. The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest.

Defendants' argument that, because Ms. Smith was not arrested like Briggs in *Malley*, the principle of *Malley* is irrelevant, is ridiculous.[4]

*Malley* holds that if an officer violates an individual's rights, the officer's actions must be objectively reasonable. Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye violated Ms Smith's Fourth Amendment right when they (1) searched her house with an invalid warrant that a reasonable, well-trained officer would have recognized as facially deficient, and (2) relied on an affidavit lacking indicia of probable cause.

Unlike Officer Ellingsworth, a reasonable officer would not have submitted the affidavit in support of the warrant because he or she would have seen the falsities or not lied in the affidavit.

Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye actions were not objectively reasonable.

Defendants claim that Ms. Smith has not established that her rights were violated when Officer Ellingsworth submitted the affidavit that he knew would mislead the judge into believing there was probable cause for a search warrant. Ms. Smith, however, has explained how the

---

[4] The officers threatened to take Ms. Smith's nephew to jail, in an effort to justify their actions, but could not find anything to charge him with.

officers violated her rights, first in her complaint, in her earlier opposition to defendants' motion to dismiss, and in this memorandum.

Defendants claim that Ms. Smith has not established that her rights were violated when Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye searched her residence based on a facially deficient warrant lacking particularity about the place to be searched. Ms. Smith, however, has explained how the officers violated her rights, first in her complaint, then further in her earlier opposition to defendants' motion to dismiss, and now in this memorandum.

Defendants state that Ms. Smith has not established that her rights were violated when Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, Baker and Sergeant Moye searched her residence based on a warrant supported by an affidavit lacking indicia of probable cause. Ms. Smith, however, has explained how the officers violated her rights, first in filing her complaint, once again in her earlier opposition to defendants' motion to dismiss, and in even more detail in this memorandum.

*Dent v. May Department Stores Company t/a The Hecht Company*, 459 A.2d. 1042, 1044 (D.C. 1982) explained that "probable cause is a mixed question of law and fact" and only becomes a question of law when no facts are in dispute. See *Jackson* v. *District of Columbia*, 541 F. Supp. 2d 334 (D.D.C. 2008). In Ms. Smith's case, the question of probable cause is a mixed question of fact and law.

**B.    The Officers Are Not Entitled to Qualified Immunity Because a Reasonable Officer Would Not Have Taken the Same Actions.**

Ms. Smith has established that the officers violated her Fourth Amendment rights. The officers knew or should have known that an illegal search of Ms. Smith's home violated her Fourth Amendment rights.

A reasonable, well-trained officer should have and would have seen the facial deficiencies in the warrant, noticing that it lacked the required particularity of the place to be searched.

A reasonable, well-trained officer should have noticed that the accompanying affidavit lacked sufficient indicia of probable cause.

A reasonable, well-trained officer would not have submitted an affidavit filled with holes, inconsistencies and falsities to a judge with the intention of misleading him or her for the purpose of obtaining a warrant.

After determining that an officer's conduct violated an individual's constitutional rights and that those rights were established at the time, the next step is an objective, fact-based determination as to whether a reasonable officer in defendant officer's position would have taken the same actions that violated a plaintiff's rights. *Anderson v. Creighton,* 483 U.S. 635, 639 (1987).

Ms. Smith has satisfied the *Saucier* test, showing the officers violated her rights and that the officers knew, or should have known, the right they violated existed.

The next question is whether a reasonable officer in the defendant officers' positions in Ms. Smith's case would have taken the same actions in violation of Ms. Smith's rights. The simple answer to that question is "NO."

Given the circumstances surrounding the composition of the affidavit, submitting it to the judge in support of a warrant, the lack of particularity in the warrant describing the place to be searched, and the lack of indicia of probable cause in the affidavit, a reasonable officer would not have taken the same actions.

The officers totally disregarded Ms. Smith's Fourth Amendments rights.

**C. Ms. Smith's Complaint Satisfies Fed. R. Civ. Pro. Rule 8 and 12(b)(6)**

Defendants again argue that Ms. Smith has failed to state a claim for which relief can be granted. Ms. Smith fully addressed this issue in her June opposition to defendants' motion to dismiss.

However, for the sake of the Defendants, Ms. Smith will again explain the requirements for a complaint. As the District of Columbia Circuit explained in *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008):

> Ordinarily, a sufficient complaint "contain[s] a short and plain statement of the claim showing that the pleader is entitled to relief," enough to give a defendant "fair notice of the claims against him."

Moreover, in deciding a Rule 12(b)(6) motion, the court:

> ... "constru[es] the complaint liberally in the plaintiff's favor, "[a]ccepting as true all of the factual allegations contained in the complaint ... with the benefit of all reasonable inferences derived from the facts alleged ...."

Id. (Citations omitted).

The Defendants' interpretation of *Twombly* is erroneous. *Aktieselskabet* specifically addressed this "plausibility test" interpretation. As the court there explained:

> ... the district court interpreted *Twombly* as establishing a new threshold for complaints; enough facts to "clarify the grounds" on which each claims rests and "nudge[ ] their claims across the line from conceivable to plausible." ... Many courts have disagreed about the import of *Twombly*. We conclude that *Twombly* leaves the long-standing fundamentals of notice pleading intact.

525 F.3d at 15.

*Aktieselskabet* further noted that *Twombly* upheld the pleading standard of Rule 8 — that the Complaint simply provide notice of the case's general nature and the circumstances or events upon which the claim is based. Id. at 16.

Therefore, said *Aktieselskabet*, a specific quantity of facts was not required, but only:

> ... a short and plain statement of the claim showing that the pleader is entitled to relief.

Id.

Concerning the lower courts' imposition of "various requirements of particularity" as to complaints, *Aktieselskabet* stated:

> The Supreme Court has continually pruned back such requirements, with the admonition that we are not to impose heightened pleading requirements. ... After decades of consistency, we will not lightly assume the Supreme Court intended to tighten pleading standards.

Id.

About the heightened pleading standard in *Twombly*, the *Aktieselskabet* court concluded:

> In sum, *Twombly* was concerned with the plausibility of an inference of conspiracy, not with the plausibility of a claim. A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success, for a complaint "may proceed even if it appears 'that a recovery is very remote and unlikely,'" ... a complaint "may not be

> dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations .... " Further, the court must assume "all the allegations in the complaint are true (even if doubtful in fact)" ... and the court must give the plaintiff "the benefit of all reasonable inferences derived from the facts alleged." ...

Id. at 17.  (Citations omitted).

Using the correct interpretation of *Twombly*, this Court should deny Defendants' motion to dismiss.

## CONCLUSION

In light of the above, this Court should deny the Defendants' motion to dismiss because the officers violated Ms. Smith's Fourth Amendment rights and are not entitled to qualified immunity because a reasonable officer would not have taken the same actions.

Ms. Smith requests a hearing on these issues before the Court.

                                            Respectfully submitted,

August 15, 2008                        */s/  James R. Klimaski*
                                        James R. Klimaski, #243543

August 15, 2008                        */s/ Megins S. Skolnick*
                                        Megins S. Skolnick, # 498452

                                          Klimaski & Associates, P.C.
                                          1625 Massachusetts Avenue NW
                                          Suite 500
                                          Washington, DC  20036-2245
                                          202-296-5600
                                          Klimaski@Klimaskilaw.com
                                          Skolnick@Klimaskilaw.com

                                          ***Attorneys for Leola Smith***

**Certificate of Service**

I certify that the foregoing ***Plaintiff Leola Smith's Opposition to Defendants' Supplemental Memorandum Supporting Their Motion to Dismiss*** will be served to the following counsel for Defendants in this case by the Court's CM/ECF system after proper filing of an Adobe PDF version of this item on the Court's secure website on August 15, 2008:

DWAYNE C. JEFFERSON
Assistant Attorney General
Office of the D.C. Attorney General
441 4th Street NW
6th Floor South
Washington, D.C. 20001
(202) 741-0554 fax
dwayne.jefferson@dc.gov

                                       */s/ Jon Pinkus*
                                       Jon Pinkus
                                       Klimaski and Associates, PC