UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEOLA SMITH, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 08-0808 (ESH) |
| CATHY LANIER, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leola Smith filed this lawsuit against theDistrict of Columbia, Police Chief Cathy Lanier, and a list of Metropolitan Police Department ("MPD") officers. Plaintiff seeks to recover damages based on claims of constitutional and common law torts arising from the allegedly unlawful search of her home at 1016 17 Place N.E., Apt. #4. Defendants have filed a motion to dismiss, which for the reasons stated herein, will be granted.

## BACKGROUND

On July 14, 2007, at approximately 6:55 p.m., Officers Ellingsworth, Petz, Pepperman, Yammine, Harris, and Baker, and Sergeant Moye executed a search warrant for at 1812 9th Street N.W. in Washington D.C. (*See* Defs.' Ex. 1 [Search Warrant and Affidavit] at1.)[1] The search warrant was issued by a judge of the District of Columbia Superior Court based on an

---

[1] The Court may take judicial notice of the search warrant and affidavit without converting the motion to dismiss into a motion for summary judgment. *See Vance v. Chao*, 496 F.Supp.2d 182, 184 n. 1 (D.D.C. 2007).

1

affidavit submitted by Officer Thomas Ellingsworth.  (*Id.*)

Officer Ellingsworth represented that within the seventy-two hours prior to the submission of the affidavit, he had been contacted by a confidential informant ("CI") who advised him that crack cocaine was being sold from within the residence located at 1812 9th Street N.W.  (*Id.* at 2.)  An MPD officer met with and searched the CI, finding no drugs or currency.  (*Id.*)  The MPD officer and the CI then traveled together to the area of 1812 9th Street where the officer provided the CI with currency.  (*Id.*)  The officer watched the CI approach and enter the residence.  (*Id.*)  The CI reported meeting with an unidentified individual inside the residence and exchanging the MPD currency for crack cocaine.  (*Id.*)  The CI then met the officer at a prearranged location and handed the officer a piece of white paper containing a loose white rock substance, which tested positive for cocaine base.  (*Id.*)  The CI was searched again and found to be free of any contraband or additional U.S. currency.  (*Id.*)  Ellingsworth stated that the CI was a reliable source who had provided information that "led to the recovery of numerous items of contraband through the execution of more than twelve search warrants within the past six months."  (*Id.*)

Plaintiff Smith was not present at the time the search was executed.  (Compl. ¶ 25.)  She alleges that the officers broke down the doors to her apartment as well as to the two separate basement apartments in her home.  (*Id.* ¶¶ 20, 37.)  She further alleges that the officers ransacked her apartment and broke several antiques, but failed to leave a claim form for damages.  (*Id.* ¶¶ 33-34, 39.)  Her visiting nephew, who was present in her apartment during the search, and one of the basement apartment tenants were handcuffed.  (*Id.*  ¶¶ 26-26, 37.)  No contraband was found and no arrests were made.  (*Id.* ¶¶ 40-41.)

On May 9, 2008, plaintiff filed a complaint in this Court alleging that the officers who participated in the search are liable under 42 U.S.C. § 1983 for violating her Fourth Amendment rights by unlawfully searching her residence and conspiring to unlawfully search her residence. She further alleges that the officers intentionally and tortiously destroyed her property and were negligent in preparing the affidavit and conducting the search. Plaintiff has also brought a claim against the District under 42 U.S.C. § 1983 for failing to educate, train, and supervise the MPD officers on how to write an affidavit and obtain a search warrant.[2]

Defendants have filed motions to dismiss arguing, *inter alia*, that the individual officers are entitled to qualified immunity, that plaintiffs have failed to state a claim against the District, and that the Court should decline to exercise supplemental jurisdiction over plaintiff's common law claims.

## ANALYSIS

**I.    QUALIFIED IMMUNITY**

"Qualified immunity shields a government official from liability under § 1983 provided that the official's conduct did not violate a clearly established constitutional right of which a reasonable person would have known." *Powers-Bunce v. District of Columbia*, 541 F.Supp.2d 57 (D.D.C. 2008) (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)). Claims of qualified immunity should be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks and citation omitted). To determine whether

---

[2] In her complaint, plaintiff also raised a *respondeat superior* claim against the District, and a negligent training and supervision claim against Lanier in her official capacity. Plaintiff is no longer pursuing these claims. The motion to dismiss is therefore granted with respect to Chief Lanier. (*See* Pl.'s Opp'n to Defs.' Mot. 1 n. 1.)

qualified immunity applies, the Court must first determine whether plaintiff's allegations, taken as true, show that the official's conduct violated a constitutional or statutory right, and if so, whether that right was clearly established at the time of the alleged violation. *Id.* at 201. Plaintiff contends that the search of her home violated her clearly established right to free from an unreasonable search because the warrant that authorized the search of her home was unsupported by probable cause and because it lacked particularity as to the place to be searched.

The Court first turns to plaintiff's claim that the search was unsupported by probable cause. When police officers obtain a warrant before executing a search, they are ordinarily entitled to rely on the issuing judge's determination that probable cause exists. *See United States v. Spencer,* 530 F.3d 1003, 1006-07 (D.C. Cir. 2008). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of [qualified] immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation omitted).  The affidavit in this case indicates that the officers sought a warrant on the basis of a reliable informant's tip corroborated by a single controlled buy, a procedure that the D.C. Circuit has "consistently . . . recognized" is sufficient to establish probable cause. *See United States v. Warren*, 42 F.3d 647, 652 (D.C. Cir. 1994) (citing *United States v. Allen*, 960 F.2d 1055, 1057 (D.C. Cir. 1992); *United States v. Branch*, 545 F.2d 177, 179-80 (D.C. Cir. 1976)).  Plaintiff asserts that Officer Ellingsworth was required to engage in a number of additional steps prior to seeking the search warrant, including, *inter alia*, identifying and conducting a background check on the owner of the building and taking his affidavit to be reviewed by a more senior MPD officer.  However, she cites no legal authority in support of this novel position, and indeed, this argument is contradicted by longstanding precedent in this

Circuit. While more extensive investigation might have been beneficial, it was not constitutionally required to establish probable cause. "Probable cause requires only a probability or substantial chance that evidence may be found; it does not, by contrast, require absolute certainty." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006). The Court therefore agrees with the issuing judge that probable cause existed to justify the search, and more importantly, that the affidavit underlying the warrant was not so "bare bones" as to render the officers' belief in its validity unreasonable.[3]

Plaintiff's second argument -- that the warrant was invalid because it failed to identify the place to be searched with particularity -- is more troubling. In cases involving multi-unit residences, "courts have declared invalid those warrants that fail to describe the targeted unit with enough specificity to prevent a search of all the units." *Maryland v. Garrison*, 480 U.S. 79, 91-92 (1987). *See also United States v. Hinton*, 219 F.2d 324, 325-26 (7th Cir. 1955) ("For

---

[3] The Court also finds unpersuasive plaintiff's argument that the issuing judge's probable cause determination is undermined by a minor error in Officer Ellingsworth's affidavit. Ellingsworth described the property "as a reddish brick single family house with the numerals '1812' posted at the left of the front door . . . ." Plaintiff says that the "2" has been missing for several years. (Compl. ¶ 25.) "[A]n inaccurate statement in a warrant affidavit invalidates a warrant only if the statement was both 'material to the issue of probable cause,' and 'made knowingly and with reckless disregard for the truth.'" *Warren*, 42 F.3d at 653 (quoting *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988)). The Court need not address the officer's mental state because the error was immaterial to the probable cause finding. The only error here was in the description of the numerals next to the door, not in the identification of the residence.

Finally, the Court rejects plaintiff's allegation that the affidavit failed to show probable cause because Ellingsworth did not personally oversee all of the stages of the controlled buy. It is well-established that an officer may rely on information received from other officers so long as the source of that information is given so that the reviewing magistrate can properly evaluate probable cause. *See United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983); *United States v. Ventresca*, 380 U.S. 102, 110-11 (1965). Ellingsworth's affidavit clearly explains which parts of the investigation were done by MPD officers and which parts were done by the CI.

purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment."). However, "the warrant of a multi-unit structure will be valid where . . . the officers [who drafted and executed the warrant] reasonably believed that the premises had only a single unit." *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007).

Plaintiff has argued that neither Officer Ellingsworth, nor the officers who executed the warrant, could have reasonably believed that the building contained only one residence because it has three entrances, one for the main house and two for the basement apartments below. (*See* Pl.'s Opp'n to Defs.' Supp. Mot. 4-5.) However, she points to no other indicators, such as separate numbers, mailboxes, or doorbells, that would have suggested to the reasonable officer that the two basement entrances led to separate residences rather than to the main house. Moreover, the affidavit is clear that residence to be searched is the one connected to the "front door" which is "brown . . . with a wrought iron gate" with the numerals 1812 posted at the left of the door in white on a dark background. (*See* Defs.' Ex. 1 at 2.) However, without further evidence as to the appearance of all three doors and the facade of the home, the Court cannot determine whether the affidavit describes a specific door such that it would have been reasonable for the officers to have believed that they had a valid warrant to enter *that* door and search the residence within.[4] Because further factual development is required to determine whether the

---

[4] Based on the description in the affidavit of the "front door," it would seem that the warrant authorized the search of main apartment, plaintiff's residence. This would not, of course, have permitted the officers to search the two basement residences once they determined that they were separate from the main house. *See Garrison*, 480 U.S. at 87 (noting that the officers "were required to discontinue the search of respondent's apartment as soon as they

officers acted reasonably, the Court will deny without prejudice the motion to dismiss as to the officers and grant limited discovery to resolve this question.

## II.     MUNICIPAL LIABILITY

Defendants have also moved to dismiss plaintiff's § 1983 claim alleging that plaintiff has failed to state a claim upon which relief can be granted.  (Defs.' Mot. 9.)   A municipality may be held liable under § 1983 if plaintiff's harm was caused by a constitutional violation that resulted from the municipality's policy, custom, or practice.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  "[A] city's inaction, including its failure to train or supervise its employees adequately creates a 'custom or policy' under *Monell* when it can be said that the failure amounts to deliberate indifference' towards the constitutional rights of persons in its domain."  *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000).   Here, plaintiff alleges that had he been properly trained, Officer Ellingsworth would have identified her home as potentially containing multiple residences and engaged in further investigation before seeking a search warrant.  Plaintiff further alleges that the District's "reckless" failure to train its officers in how to draft affidavits and seek search warrants resulted in the unconstitutional search of her home. (Compl. ¶¶ 106-108.)  "At the pleading stage, only an allegation of the existence of a policy, practice, or custom and its causal link to the constitutional deprivation suffered is required." *Maniaci v. Georgetown University*, 510 F.Supp.2d 50, 64 (D.D.C. 2007).  Plaintiff has met this burden and therefore it would be inappropriate to dismiss her claim against the District at this

---

discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant.").  However, plaintiff likely does not have standing to challenge the unlawful search of her tenants' homes because *she* had no reasonable expectation of privacy therein.  *See Rozman v. City of Columbia Heights*, 268 F.3d 588, 591 (8th Cir. 2001).

time.

## CONCLUSION

For the reasons stated herein, defendants' motions to dismiss [Dkt. 5, 15] are **DENIED**.

An initial scheduling conference is set for September 24, 2008, at 9:45 a.m.



                                                                    /s/
                                                    ELLEN SEGAL HUVELLE
                                                    United States District Judge

DATE:    August 26, 2008