## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|                                        |     |                                |
|----------------------------------------|-----|--------------------------------|
| **LEOLA SMITH,** *et al.*,             | )   |                                |
|                                        | )   |                                |
| **Plaintiffs,**                        | )   |                                |
|                                        | )   |                                |
| **v.**                                 | )   | **Civil Action No. 08-0808 (ESH)** |
|                                        | )   |                                |
| **CATHY L. LANIER,** *et al.*,         | )   |                                |
|                                        | )   |                                |
| **Defendants.**                        | )   |                                |

_____ )

## MEMORANDUM OPINION

Plaintiffs Leola Smith and Dion 'Franklin have sued the District of Columbia and various Metropolitan Police Department ("MPD") officers,[1] seeking to recover damages based on alleged constitutional violations and common law torts arising from the search of Smith's home and Franklin's apartment, at 1812 9th Street, NW, in Washington, D.C. Defendants have moved for summary judgment on all claims (Defs.' Mem. of Supp. P. & A., Jan. 30, 2011 ["Defs.' Mot."]). For the reasons set forth below, defendants' motion will be granted in part and denied in part.

## BACKGROUND

### I.      FACTS

#### A.      The Property

At all times relevant to this case, Smith and Franklin lived at 1812 9th Street, NW (the "Property"). (Defs.' Statement of Uncontested Material Facts ["SOMF"] ¶¶ 4-5.) Franklin rented an apartment from Smith, who owned the Property. (Defs.' Mot., Ex. 14, Smith's Resps.

---

[1] Plaintiffs initially sued Cathy Lanier, the MPD Chief of Police, but all claims against her have been withdrawn or dismissed.

To Defs.' Interrogs. ["Smith Resps."], at 3.)  The Property is a three-story, red brick building on the corner of 9th Street and Westminster Street.  (Pls.' Opp'n to Defs.' Mot. ["Pls.' Opp'n"], Ex. 13, Photos of the Property ["Photos"], at 1.)  Three gas meters are in the backyard of the Property, behind a fence.  (Pls.' Opp'n, Ex. 8, Dep. of Leola Smith ["Smith Dep."], at 145.)  At the time of the search, there were three occupied apartments in the building.  (Pls.' Opp'n at 2.)  Smith's apartment occupied the first floor of the Property and the floors above; the other two apartments were in the basement.  (Smith Dep. at 131; Pls.' Opp'n, Ex. 3, Dep. of Officer Thomas Ellingsworth ["Ellingsworth Dep."], at 106.)

The basement apartments – one occupied by Franklin, the other by a pair of Russian students – were separated from the street by a gate with a bolt lock.  (Smith Resps. at 3.)  Behind the gate was a short hall that ended with doors to the left and right.  (Pls.' Opp'n, Ex. 7, Dep. of Dion Franklin ["Franklin Dep."], at 76.)  The doors both had locks.  (Smith Resps. At 3.)  According to Franklin, his door was painted with a "2," indicating his apartment number. (Franklin Dep. at 81.)  The façade of the building did not list separate addresses for each apartment and the apartments did not have separate doorbells.  (SOMF ¶¶ 7, 9.)  Whether Franklin's apartment had a separate mailbox is disputed, but plaintiffs assert that he had a "separate mailbox outside his apartment door accessible to the letter carrier."  (*Compare* Pls.' Statement of Genuine Issues of Material Fact ¶ 2.G *with* SOMF ¶ 7.)  According to Franklin, his apartment had a "totally different kitchen, bathroom, bedroom, living room than upstairs." (Franklin Dep. at 114.)

**B.    The Warrant**

On July 13, 2007, Officer Thomas Ellingsworth, a six-year veteran of the MPD, submitted an affidavit to a D.C. Superior Court judge as part of an application for a warrant to

search the Property.  (Defs.' Mot., Ex. E, Search Warrant ["Search Warrant"], at 2.)  The affidavit described the Property as a "reddish brick single family house with the numerals '1812' posted at the left of the front door in white on a dark background."  (*Id.*)

According to Ellingsworth's affidavit, an MPD Confidential Informant ("CI") contacted him and told him that individuals were selling crack cocaine from within the house.  (*Id.*)  Ellingsworth traveled with the CI to the house and watched "it" enter from an unmarked vehicle that was parked within eyesight of the front door and the entire house.  (Ellingsworth Dep., at 31, 44.)  According to Ellingsworth, once the CI was "inside the building" (and presumably out of view), "it" knocked on the "house door."  (Search Warrant, at 2.)  The CI entered Smith's apartment; Ellingsworth described the first floor entrance as a "wrought-iron gate" at the top of a stairway with a set of brown, "French-style" doors behind it.  (Ellingsworth Dep., at 35.)  After returning to the car, the CI told Ellingsworth that an unknown person let "it" enter the Property and sold "it" crack cocaine.  (Search Warrant, at 2.)  Ellingsworth testified that after finishing his conversation with the CI, he took another drive by the house "to get a good look at it" before returning to the office to type up his affidavit.  (Ellingsworth Dep. at 66-67.)  Ellingsworth testified that he only saw the gate and French-style doors at the top of the staircase and did not see any other door into the house.  (*Id.*)

Ellingsworth testified that as part of the review of his affidavit, he had a paralegal in the U.S. Attorney's Office check the records on the property.  (*Id.* at 78 ("you go to a paralegal.  She does a records check . . .").)  The paralegal determined that a search warrant had been executed at the property and informed Ellingsworth of this fact.  (*Id.*)  A review of the warrant, which was issued in 1995, reveals the target of the search as 1812 9th St., NW, apartment number two.

(Pls.' Opp'n, Ex. 9, History of Search Warrants Issued.)  It is unclear whether Ellingsworth personally examined this file, or if he was even told of the reference to "apartment number two."

On July 13, Judge Robert Tignor approved the warrant for a search of the Property. (SOMF ¶ 2.)

### C.    The Search

On July 14, Sergeants Petz and Moye and Officers Ellingsworth, Pepperman, Yammine, Harris, and Baker arrived at the Property to conduct the search.  (Pls.' Opp'n at 2.)  Smith was not in her apartment at the time, although her nephew, Robert Jones, was present.  (Smith Resps. at 2.)  Franklin was in his basement apartment.  (*Id.*)

At about 6:55 p.m., the officers broke down the doors to Smith's first floor apartment, breaking the locks and splitting the doors.  (Smith Resps. ¶ 5.)  Smith testified that during their search of her apartment, they crushed her antique vases, figurines and jewelry and destroyed approximately twenty-five pairs of shoes.  (Pls.' Opp'n at 32-34.)  The officers then "went back outside and destroyed the door jambs and locks" of the basement apartments.  (Am. Compl. ¶ 40. *See also* Franklin Dep. at 81.)  It is unclear how long the officers were in Franklin's apartment, although Franklin estimated that they stayed "about two hours" from 6:45 to 8:45.[2]  (Franklin Dep. at 115.)  According to Franklin, the police cut open his mattress, damaged his clothes, and scratched his watches.  (Pls.' Opp'n at 35-36.)  Franklin also testified that the officers asked him "why *your apartment*" so messy and whether he knew "anything about any drug activity upstairs."  (Franklin Dep. at 113 (emphasis added).)  He responded that he "live[d] down here" and "don't know what goes on upstairs," and was only upstairs "when I'm paying my rent or so

---

[2]  The Complaint alleges that the officers searched Smith's apartment before Franklin's.  (Am. Compl. ¶ 40)

on." (*Id.*)  The officers did not find cocaine or narcotic paraphernalia anywhere in the house, although they recovered two boxes of .45 caliber ammunition.[3]  (SOMF ¶ 6.)

## II.    PROCEDURAL HISTORY

On May 9, 2008, Smith filed a complaint against the District of Columbia, Cathy Lanier and the named officers.  The District and Lanier filed a motion to dismiss, which the Court denied. *Smith v. Lanier*, 573 F. Supp. 2d 6 (D.D.C. 2008).  Defendants submitted a motion for reconsideration, along with various photographs of the Property, which the Court also denied. *Smith v. Lanier*, Civ. No. 08-cv-808, Mem. Op. filed Oct. 27, 2008 [Dkt. No. 35].

Smith then filed an amended complaint that added Franklin as a plaintiff and included allegations that Officer Ellingsworth had either lied or acted with reckless disregard to the truth in preparing his affidavit.  (Am. Compl. ¶¶ 65-76.)  The amended complaint included eight causes of action.  Counts I-III allege that the named officers violated 42 U.S.C. § 1983 by executing a warrant based on a facially deficient affidavit (Count I), by executing a warrant that was facially deficient (Count II), and by conducting an unreasonable search (Count III).  Count IV alleges a civil conspiracy on the part of the officers to violate § 1983.  Count V alleges that the officers committed "intentional tortious destruction of property" during their search.  Count VI alleges negligence against the officers.  Count VII alleges that the District was liable for the claims under *respondeat superior*; Count VIII alleges that Lanier and the District were liable for negligently training and supervising the officers.

Defendants filed a new motion to dismiss the amended complaint, which the Court denied in part, declining to dismiss plaintiffs' intentional tort and negligence claims and holding that further factual development was necessary to resolve the constitutional and conspiracy claims.  (Dkt. No. 35.)  The Court did, however, dismiss Count VII in its entirety and Count VIII

---

[3]  It is unclear in which apartment the police found the ammunition.

as to Lanier.  (*Id.*)  Discovery closed on January 15, 2011, and defendants now move for summary judgment.

## STANDARD OF REVIEW

### I.    SUMMARY JUDGMENT

Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, admissions, and affidavits filed pursuant to discovery show that, first, 'there is no genuine issue as to any material fact' and, second, 'the moving party is entitled to a judgment as a matter of law.'"  *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) and Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb*, 433 F.3d at 895 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in their favor.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006)).  Plaintiffs' opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 322; Fed. R. Civ. P. 56.

## II.    QUALIFIED IMMUNITY

The individually-named police officers will not be liable for damages if they are entitled to qualified immunity, which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation marks omitted).  To determine whether qualified immunity applies, the Court asks (1) whether plaintiffs' allegations, if taken as true, show that the defendants' conduct violated a constitutional right, and (2) whether that right was "clearly established"[4] at the time of the defendants' alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court may "exercise [its] sound discretion" in deciding which element to address first.  *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009); *Bame v. Dillard*, No. 09-5330, 2011 WL 1085882, at *3 (D.C. Cir. Mar. 25, 2011).

Although the issue of whether defendants are entitled to qualified immunity is "a pure question of law to be decided by the Court," pretrial "resolution of the qualified immunity defense . . . may be thwarted by a factual dispute." *Halcomb v. WMATA*, 526 F. Supp. 2d 20, 22 (D.D.C. 2007) (quoting *Warren v. Dwyer*, 906 F.2d 70, 74 (2d Cir. 1990)) (internal alterations omitted).  Thus, "legitimate and material factual disputes" about what Officer Ellingsworth and the other police officers actually did will prevent the Court from determining whether they are entitled to qualified immunity.  *Id.* at 23 (holding that questions as to what transpired between police officer and plaintiff were "unavoidably" questions of fact that "prevent[ed] the Court from deciding the legal questions before trial").  *See also Johnson v. District of Columbia*, 528 F.3d

---

[4]  Defendants have not argued that the constitutional right at issue is not clearly established.  Nor could they, because "[a] reasonable officer would know that such warrantless searches and seizures would violate the plaintiffs' constitutional rights." *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (internal quotation marks omitted).  The Court will therefore limit its discussion to whether there is an issue of material fact as to whether defendants have violated plaintiffs' constitutional rights.

969, 977-78 (D.C. Cir. 2008) (summary judgment on qualified immunity was "premature" where testimony of plaintiff and police officers conflicted, creating genuine issue of material fact as to whether police acted reasonably).

## ANALYSIS

### I.    CLAIMS UNDER § 1983

#### A.    Count I – Unconstitutionally Insufficient Affidavit

Defendants argue that the officers are entitled to qualified immunity as to Count I because the Court has already held that Ellingsworth's affidavit is sufficiently detailed to support the search warrant (Defs.' Mot. at 6) and, therefore, the law of the case doctrine applies.  (Defs.' Reply at 7-8.)  This Court has indeed held that "probable cause existed to justify the search" and that the affidavit was sufficient to "render the officers' belief in its validity" reasonable.  *Smith*, 573 F. Supp. 2d at 10.  However, the Court has not addressed plaintiffs' claim, first alleged in their amended Complaint, that Officer Ellingsworth lied in his affidavit about his dealings with the CI, and therefore, the search warrant was not supported by probable cause and the search violated the Fourth Amendment.  (Mem Op. & Order [Dkt. 35] at 3.)  Thus, the law of the case doctrine does not control.

However, the only "evidence" plaintiffs have introduced to support this claim is based on speculation and innuendo.  They have submitted no affirmative evidence that Ellingsworth concocted a fake informant, but have argued only that the absence of police records relating to the informant creates a genuine question as to whether the informant ever existed.[5]  (Pls.' Opp'n

---

[5] Although defendants concede that the working file and unit file relating to the CI are missing, they have produced documentation showing that a CI performed a controlled drug buy at the Property, including documents demonstrating that Officer Yammine obtained funds for use in a controlled buy around this time and that a white rock substance was obtained by the CI as a result of the controlled buy.  (*See* Dist. of Columbia's Notice of Filing Decls. *Ex Parte* and Under Seal [Dkt. No. 83] at 1; Defs.' Reply at 8.)  The identity of a CI is generally privileged. *Washington v. District of Columbia*, 685 F. Supp. 264, 273 (D.D.C. 1988) (citing *McCray v. Illinois*, 386 U.S. 300 (1967)).  Thus, the "trial judge must exercise discretion in light of particular circumstances in resolving conflict

at 7-10.)  Plaintiffs have provided no case law suggesting that missing police records alone are sufficient to transform the existence of a CI into a genuine question of fact.  Because plaintiffs have provided only unsupported allegations for this claim, there is no issue of material fact as to the plausibility of the affidavit.  Therefore, the warrant is supported by probable cause, and defendants' motion for summary judgment as to Count I will be granted.

### B.    Count II – Facially Deficient Search Warrant

Defendants argue that the Court should grant summary judgment on Count II because plaintiffs have "failed to establish" that the officers violated an actual constitutional right when they executed the warrant.  (Defs.' Mot. at 5.)  However, as plaintiffs note (Pls.' Opp'n at 10), the "general rule" is that a warrant that authorizes the search of a multi-unit dwelling without noting the "precise unit" to be searched is invalid.  *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007).  There is no dispute that the Property was a multi-unit dwelling.  Count II therefore alleges that the police violated the Fourth Amendment by executing a search warrant that lacked sufficient particularity.[6]

---

between privilege of nondisclosure and need to legitimate a search."  *Id.* at 273 n.20 (citing *Roviaro v. United States*, 353 U.S. 53, 60-61 (1953)).  Plaintiff has failed to provide any "evidence challenging defendants' good faith" and has failed to place any material fact as to the informant's existence into dispute.  *Id.* at 274 n.23.  Nevertheless, the Court has reviewed the affidavits submitted by defendants *ex parte* and the (ample) documentation of the controlled buy, and has conducted an *in camera* hearing to "make sure the informant indeed existed . . . ."  *See id.* at 273-74 & n.23 (where plaintiff claimed that informant did not exist, *in camera* hearings "have been used frequently by courts . . . and have been viewed favorably by most commentators");  *Warren v. Williams*, 2006 WL 860998, at *16 (D. Conn. Mar. 31, 2006) (court reviewed information provided by defendants *in camera* to determine whether "a material issue of fact may exist with regards to the reliability of the CI statements . . .").  [*See also* Dkt. No. 83.]  Having considered all this evidence, the Court must consider that plaintiffs' unsupported allegations do not create an issue of material fact.

[6]  The Court has already determined that there was constitutionally sufficient evidence to establish probable cause.  *Smith*, 573 F. Supp. 2d at 10.  However, the warrant clause of the Fourth Amendment *also* requires that a warrant "particularly describe 'the place to be searched, and the persons or things to be seized.'"  *United States v. Ritter*, 416 F.3d 256, 264-65 (3rd Cir. 2005) (quoting U.S. Const. amend. IV).  This "particularity" requirement is what is at issue here.

Defendants next argue that the Officer Ellingsworth reasonably believed that the Property was a single family home, and therefore the warrant did not violate the Fourth Amendment.[7] (Defs.' Mot. at 10-11.)  A search warrant for a multi-unit dwelling that fails to note the precise unit to be searched will be valid if the officer "reasonably believed that the premises had only a single unit."  *Perez*, 484 F.3d at 741.  To determine whether this exception applies, the Court "must look to the information in possession of the police and magistrate at the time the warrant was issued."  *Id.*  What other officers knew prior to *executing* the warrant is irrelevant here. *Garrison*, 480 U.S. at 85 ("Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued.").  Thus, the search warrant was valid if Officer Ellingsworth "reasonably" believed that the warrant accurately described the dwelling after making "reasonable inquiry under the circumstances."  *Ritter*, 416 F.3d at 266 (citing *Maryland v. Garrison*, 480 U.S. 79, 85-86 (1987)); *United States v. Noel*, 938 F.2d 685, 687 (6th Cir. 1991).

Defendants argue that Ellingsworth observed the exterior of the property prior to preparing his affidavit and, based on these observations, he could reasonably believe it was a single family dwelling.  (Defs.' Mot. at 9.)  Plaintiffs argue that he should have done more than observe the exterior of the Property, such as checking utility records.  (*Id.* at 17.)  The Seventh Circuit has held that surveillance of a property, combined with observations of a controlled buy by a CI and an interview of the CI, constitute a reasonable inquiry.  *See United States v. White*, 416 F.3d 634, 638-39 (7th Cir. 2005).  It is undisputed that Ellingsworth observed the Property several times and asked the U.S. Attorney's office to locate any records of past searches or complaints relating to the Property.  Moreover, Ellingsworth spoke to a CI, who did not tell him

---

[7]  Defendants also argue that the officers did not "knowingly" violate the law and therefore cannot be liable.  (Defs.' Reply in Further Supp. of Summ. J. Mot. ["Defs.' Reply"] at 2.)  However, as they themselves concede in their Opposition, the standard is whether the officers reasonably believed the warrant was valid.

that the Property contained multiple units.  Under these facts, no further inquiry was required to meet the particularity requirement.

Plaintiffs also argue that Ellingsworth either knew or should have known that the Property was a multi-unit structure because the U.S. Attorney's office had files stating that the police had executed a search warrant on "Apartment 2" on the Property in 1995.  (Pls.' Opp'n at 16.)  There is no specific "checklist that must be adhered to in all investigations;" rather, the "reasonableness of law enforcement's total inquiry is at issue" here.  *United States v. Fennell*, 496 F. Supp. 2d 279, 282 (S.D.N.Y. 2007) (quoting *United States v. Maneti*, 781 F. Supp. 169, 182 (N.D.N.Y. 1991)).  The file from the U.S. Attorney states that a warrant was executed on "Apartment 2" of the Property in 1995.  (*Id.* at 16.)  However, the file – in a section not attached to plaintiffs' opposition memorandum – also describes the Property as a "Residential – Row – Single Family" home.  (District of Columbia's Notice of Filing Sealed Document [Dkt. 90] at 24.)  Furthermore, Ellingsworth has repeatedly stated that he did not know that the Property was a multi-unit dwelling.  (Ellingsworth Dep. at 106; Pls.' Opp'n, Ex. 5, Aff. of Thomas Ellingsworth ¶ 8.)[8]  Plaintiffs have failed to cite – and this Court has been unable to locate – any cases requiring police to review decade-old files as part of a reasonable inquiry prior to submitting an affidavit for a search warrant.  Indeed, to "hold otherwise would in essence place upon law enforcement agents the requirement of checking" every ancient record on file "in every case."  *See Fennell*, 496 F. Supp. 2d at 282 (quoting *Maneti*, 781 F. Supp. at 181) (internal quotation marks omitted).  Given the undisputed record before the Court, no reasonable jury could find that Ellingsworth failed to conduct a reasonable inquiry.  Therefore, because he

---

[8]  As defendants note, plaintiffs incorrectly claim in their Opposition that Ellingsworth testified he saw the file. (Defs.' Reply at 3.)  Although defendants admit that he "communicated" with the paralegal at the U.S. Attorney's office (*id.*), there is no evidence that he ever saw the file or knew anything more than that a search had previously been conducted on the Property.

reasonably believed that the Property was a single family home, the search warrant was valid when issued, and Count II will be dismissed.

### C.      Count III – Unreasonable Search

Defendants' motion for summary judgment on Count III presents two separate issues: whether the officers should have realized that the dwelling was not a single family unit at some point before or during their search and, if so, whether the officers appropriately limited their search in light of this realization. "That the warrant be properly issued . . . is only half of what the Fourth Amendment requires." *Guzman v. City of Chicago*, 565 F.3d 393, 397 (7th Cir. 2009). Once the officers knew or should have known "of the error in what they encountered versus what was authorized by the warrant, they were obligated" to limit their search to areas "clearly covered" in the warrant or to discontinue the search entirely. *Ritter*, 416 F.3d at 266. *See also Garrison*, 480 U.S. at 87 ("as the officers recognized, they were required to discontinue the search . . . as soon as they . . . were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant"). Because the officers should arguably have realized that the warrant was overbroad when they entered the basement area, the Court will grant defendants' motion for summary judgment as to Smith's claim under Count III but deny defendants' motion as to Franklin's claim.

Plaintiffs argue that the police should have realized that the warrant was invalid before they even began their search. They suggest that the officers should have known that the Property was a multi-unit building because there were three gas meters in the backyard (*id.* at 21), and because the house had two mailboxes and two separate entrances. (*Id.* at 22.) "Indicia of a separate residence include separate entrances, separate doorbells, separate house numbers, name plates, and mail boxes." *Fennell*, 496 F. Supp. 2d at 281. *See also Birthwright v. City of New*

*York*, No. 01-Civ-3940, 2005 WL 2179072, at *6 (S.D.N.Y. Sept. 8, 2005) (number of doorbells, mailboxes and entrances and presence of intercom system, name plates and apartment numbers were "outward signs of multiple residency"). It is undisputed that the Property has only one doorbell and only one house number on its exterior. (SOMF ¶¶ 8-9.) Moreover, defendants have produced photographic evidence that no mailbox is visible when standing outside the gate to the basement apartments. (*See* Notice of Hand Delivering Photos [Dkt. No. 22].) Plaintiffs have, however, introduced evidence that Franklin had a mailbox outside his apartment (Pls.' Statement of Genuine Issues of Material Fact ¶ 2.G), and have argued that Smith's testimony creates a factual dispute as to whether this mailbox was visible from the street. (Pls.' Opp'n at 15.) However, plaintiffs' liberal excerpting makes it impossible for the Court to determine what Smith's testimony actually was. (*See* Smith Dep. at 188, 190.) Other than the cryptic lines in her testimony, plaintiffs have introduced no evidence that would create a dispute of material fact about the location of the mailbox. Similarly, even drawing all inferences in favor of the plaintiffs, the gas meters do not seem to have been visible from the exterior of the house. According to Smith, "[b]efore the fence was put up, they could see three meters . . . ." (Pls.' Opp'n at 21 (quoting Smith Dep. at 145).) The backyard fence thus appears to have prevented the officers from noticing the meters.[9] Thus, plaintiffs have not produced any competent evidence to contradict the officers' testimony that they did not see evidence that the Property was a multi-unit building, (*see* Defs.' Mot. at 10), and thus, the Court finds that the officers could reasonably have believed that the building was a single-family residence when they arrived. *See United States v. Rios*, No. 09-CR-245, 2010 WL 1529435, at *5 (E.D. Wis. Feb. 12, 2010)

---

[9] Even if the officers had noticed or reasonably should have noticed the meters, this fact "standing alone," would probably not be "sufficient for Fourth Amendment purposes to apprise them that the house contained separate dwelling units." *United States v. Clark*, No. 10-62-P-S, 2010 WL 4365562, at *15 (D. Me. Oct. 27, 2010).

(police executing search warrant reasonably believed property to be searched was a single unit where the "exterior of the building" did not reveal that there were two units).

Plaintiffs also argue that the police officers should have known that the Property was a multi-unit dwelling because they were familiar with the location. (Pls.' Opp'n at 19.) However, simple familiarity with or prior visits to a building do not necessarily put an officer on notice that the building is a multi-unit dwelling. *See Mena v. City of Simi Valley*, 226 F.3d 1031, 1037 (9th Cir. 2000) (evidence of prior visits insufficient to create issue of material fact that officers should have known that dwelling was multi-unit). Although some of the officers admit to knowing of the house or to visiting the house (Pls.' Opp'n at 18-20), plaintiffs have presented no evidence to refute the officers' sworn testimony that they believed the property was a single family home. Plaintiffs' conclusory allegations cannot overcome the competent evidence presented by the defendants.

The Court thus finds that there is insufficient evidence that the police knew or should have known that the warrant was unconstitutionally broad before or during their search of Smith's apartment. "The officers' conduct and the limits of the search [are] based on the information available as the search proceed[s]." *Garrison*, 480 U.S. at 87. Thus, Smith cannot bring a claim for a violation of the Fourth Amendment based on the search of her apartment. *See Ritter*, 416 F.3d at 266 (officers only obligated to limit or discontinue search once they "knew or should have known of the error"). Nor can Smith bring a claim based on the search of Franklin's apartment, because she had no privacy interest in Franklin's rooms. *Shaw v. City of Fostoria*, No. 3:09-CV-2109, 2009 WL 3682330, at *1 (N.D. Ohio Nov. 2, 2009) ("[I]t has long been settled that a landlord's mere ownership interest does not create a privacy interest in property he rents out to others.") Smith's claim under Count III will therefore be dismissed.

Franklin's claim, however, survives.  Even if the officers reasonably believed that the warrant was valid when they began the search and during their search of Smith's apartment, they were required to stop searching "as soon as" they were "on notice" of the risk that they might be in a unit "erroneously included within the terms of the warrant."  *Garrison*, 480 U.S. at 87. Officer Ellingsworth states that after entering the basement area, the police discovered it contained two separate apartments.  (Ellingsworth Dep. at 106.)  Thus, it appears that upon entering the basement area, the officers should have been on actual notice that the search warrant was overbroad.  If so, they should have stopped searching immediately; their failure to do so strips them of qualified immunity.  *Simmons v. City of Paris*, 378 F.3d 476, 481 (5th Cir. 2004) ("[q]ualified immunity does not provide a safe harbor for police to remain in a residence after they are aware that they have entered the wrong residence by mistake").

There is also an issue of material fact as to whether the police should have realized that their warrant was overbroad when they encountered locked and numbered doors in the basement hallway.[10]  *See Jacobs v. City of Chicago*, 215 F.3d 758, 769 (7th Cir. 2000).[11]  *See also United States v. Geraldo*, 271 F.3d 1112, 1118 (D.C. Cir. 2001) (agents "properly limited their search to common areas" upon determining that property contained "individual, locked bedrooms . . . indicative of a multi-unit dwelling"); *Kao v. Markel Ins. Co.*, 708 F. Supp. 2d 472, 480 (E.D. Pa. 2010) ("inconceivable" that police did not recognize building had separate apartments where

---

[10]  Defendants again argue that plaintiffs must show that the officers knew that the house was a multi-unit dwelling and, therefore, "knowingly" violated the law.  However, as noted, the question is whether the officers knew *or should have known* that the warrant was inaccurate.  *See Ritter*, 416 F.3d at 266

[11]  In *Jacobs*, police executed a warrant as to the entire building.  *Jacobs*, 215 F.3d at 769.  The police discovered that the building had three separate apartments, each marked by the word "Apt." and a number and each with its own doorbell.  *Id.*  Moreover, the apartments were not linked to one another internally; the plaintiffs' apartment could not be reached "by any means other than by exiting the first apartment, going around to the side of the building, and entering through a separate door."  *Id.*  Lastly, the police initially entered the wrong apartment and were told that the plaintiff lived on the second floor.  *Id.*  The Court found that searching plaintiff's apartment was illegal because "reasonable officers" should have realized that the building consisted of separate apartments before entering.  *Id.*

building contained commercial property, "a staircase, a hallway, and separate closed doors to each apartment"); *United States v. Muse*, 729 F. Supp. 2d 905, 912 (E.D. Mich. 2010) (reasonable person could not find two suites were the same unit where there was "no access from one suite to the other," and the suites had "separate lock and key" and "distinct" signage). Drawing all reasonable inferences in plaintiffs' favor, the basement hallway had a separate mailbox and ended in two locked doors, at least one of which had a number painted on it. This hallway was not accessible from the first floor. If the basement was as plaintiffs describe, there is at least a question of fact as to whether the officers should have realized that they were in a multi-unit building when they approached the basement after being upstairs. If they reasonably should have known the warrant was overbroad, their decision to search Franklin's apartment and to detain Franklin for more than an hour, "crosses the line between a reasonable mistake and affirmative misconduct that traditionally sets the boundaries of qualified immunity." *Simmons*, 378 F.3d at 481.

Because Franklin has shown genuine issues of material fact, it will be "for the trier of fact to determine, based on the credibility of the evidence before it, at what point the officers knew or reasonably should have known" that the search warrant was overbroad, and "to determine what searches and seizures occurred after that." *Pray*, 49 F.3d at 1160 (trier of fact to determine whether officers continued securing residence for four to five minutes after realizing they were in the wrong apartment). *See also Harman v. Pollock*, 446 F.3d 1069, 1085 (10th Cir. 2006) (dispute as to reasonableness of officers' failure to realize that they were in a separate residence would be resolved by trier of fact); *Cooper v. Dailey*, No. 07-cv-2144, 2010 WL 1415986, at *5 (N.D. Ill. Mar. 31, 2010) ("A number [of] courts of appeals have concluded in analogous cases that the reasonableness of police officers' failure to realize that they were at a residence not

anticipated in a search warrant is a question for the trier of fact.").  The trier of fact will evaluate the evidence and determine which of the searches and seizures, if any, took place after the officers "discovered or reasonably should have discovered that" the search warrant was overbroad.  Any searches and seizures that took place after that point violated plaintiffs' Fourth Amendment rights.  *Id.* at *5 n.4.  The Court will therefore deny defendants' motion for summary judgment on Franklin's claim under Count III.

## II.    CONSPIRACY (COUNT IV)

Defendants argue that Smith and Franklin have failed to sufficiently support their conspiracy claim with facts.[12]  (Defs.' Mot. at 14.)  To survive a motion for summary judgment, plaintiffs need not "produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy," but they must at least "show some evidence of agreement between the defendants" to violate their rights.  *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1284 (11th Cir. 2002).  *See also Austin v. District of Columbia*, No. 05-2219, 2007 WL 1404444, at *11 (D.D.C. May 11, 2007) (requiring "specific circumstantial evidence" that each conspirator shared same conspiratorial objective and that they "positively or tacitly came to a mutual understanding" to accomplish a "common and unlawful plan").  Plaintiffs have not produced any evidence that would allow a jury to infer the existence of a conspiracy, and they make no factual argument in their opposition motion in support of this count.  Plaintiffs refer only to their accusation that Ellingsworth falsified the affidavit in support of the search warrant.[13]  (Pls.' Opp'n at 30.)  Given the Court's conclusion in Part I.A, *supra*, this assertion

---

[12]  Because plaintiffs have failed to allege facts sufficient to support a conspiracy claim, the Court need not consider the applicability of the "intracorporate conspiracy" doctrine.  (Defs.' Mot. at 13.)

[13]  Plaintiffs' opposition also refers to a supposed conspiracy to "cover up" Ellingsworth's alleged fraudulent confidential informant *after* the search.[13]  (Pls.' Opp'n at 2-3.)  However, their Complaint refers only to a conspiracy to execute the search warrant and enter the Property.  (Am. Compl. ¶¶ 106-110.)  Even if plaintiffs had properly alleged this in their complaint, they have also failed to provide any evidence supporting the conspiracy's existence.

cannot support a claim of conspiracy.  Therefore, defendants' motion for summary judgment as to Count IV will be granted.

## III.    "INTENTIONAL TORTIOUS DESTRUCTION OF PROPERTY"[14] (COUNT V)

Plaintiffs argue that the police officers are liable for "intentional tortious destruction of property" based on the damage to their apartments that occurred during the execution of the search warrant.[15]  Defendants move for summary judgment because plaintiffs have failed to submit "documentary evidence" that there was actual damage to the antiques and other articles of property discussed in the Complaint, or, alternatively, because plaintiffs have failed to submit expert testimony to prove that defendants improperly executed the warrant.  (Defs.' Mot. at 15.)

Plaintiffs have introduced extensive testimony to support their claim that their property was destroyed.  (Smith Resps. at 2-3; Smith Dep. at 327, 375; Franklin Dep. at 81, 116.) Moreover, plaintiffs have introduced photographic evidence of the Property in the aftermath of the search.  (Pls.' Opp'n, Ex. 13, at 8-10.)  Plaintiffs have therefore submitted sufficient evidence to create a genuine issue of material fact as to the existence of damage.

Plaintiffs further argue that expert testimony is unnecessary and that a jury should decide whether the officers acted reasonably.  (Pls.' Opp'n at 36.)  "Officers executing a search warrant

---

Moreover, as discussed in Part I.A, *supra*, the Court has satisfied itself as to the existence and identity of the confidential informant.  (Defs.' Reply at 8.)

[14]  So far as the Court can determine, this claim appears to fall into the category of a claim for damage to real property and personal property.  Under D.C. law, damage to the realty (including damage to doors and locks) constitutes a trespass, and the damage to personal property constitutes a trespass to chattels and conversion. *See Youngbey v. District of Columbia*, 09-CV-596, 2011 WL 697158, at *18 (D.D.C. Mar. 1, 2011) (plaintiff could not recover for damage to doors under theory of trespass to chattels or conversion because "[d]oors . . . are generally considered to be real property or fixtures to real property"). *See also Certain Land in City of Washington, D.C. v. United States*, 355 F.2d 825, 826 (D.C. Cir. 1965) (distinguishing between "personal property" and fixtures that are part of the realty).

[15]  Defendants suggest that plaintiffs' common-law claim for intentional destruction of property is a constitutional claim.  (Defs.' Mot. at 14.)  However, plaintiffs have never suggested that their claim for destruction of property is linked to their Fourth Amendment claims.  (Am. Compl. ¶¶ 111-116; Pls.' Opp'n at 31-36.)  Count V appears to only allege an intentional common law tort against the officers who conducted the search.

may damage property if it is reasonable under the circumstances to do so." *Youngbey*, 2011 WL 697158, at *18 (citing *Dalia v. United States*, 441 U.S. 238, 258 (1979)). In *Youngbey*, a case involving alleged trespass to chattels and conversion by police officers executing a search warrant, the Court denied the District's motion for summary judgment because the District's only offered justification for the property damage was that the police "thought a homicide suspect lived in the house and might have a gun." *Id.* at *18. The Court held that the executing officers were "arguably unreasonable," without consulting expert witnesses or citing expert testimony. *Id.* Defendants have cited no case law to suggest that the Court in *Youngbey* should have held otherwise.[16] The Court cannot find that, as a matter of law, plaintiffs are required to produce expert testimony to establish that the police acted unreasonably during their search of the Property.[17] Plaintiffs have alleged sufficient facts to make the reasonableness of the officers' conduct a question that is within the ken of the average juror. Defendants' motion for summary judgment on Count V is therefore denied.

## IV.    NEGLIGENCE (COUNT VI)

Defendants move for summary judgment on Count VI because plaintiffs have produced no expert testimony to support their claim that the police officers negligently prepared the affidavit and conducted the search. (Defs.' Mot. at 16-17.). To show negligence, plaintiffs must show an "applicable standard of care," a "deviation from that standard by the defendant, and a

---

[16] D.C. precedent supports *Youngbey*. In D.C., expert testimony is not required to prove a claim of assault and battery arising out of an arrest. A police officer has a "qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 955 (D.C. 1980)). Expert testimony is not required in order to determine whether the force used was reasonable. *Smith v. District of Columbia*, 882 A.2d 778, 792 (D.C. 2005).

[17] While plaintiffs do not need to offer expert testimony, they will have to introduce testimony and documentary evidence at trial "pertinent to the reasonableness of police" action in searching the Property, as well as "applicable standards governing" execution of search warrants. *Smith*, 882 A.2d at 792 (expert testimony was not necessary at trial to establish reasonableness of police use of force, where plaintiff introduced pertinent testimony, documentary evidence, and statutes and regulations that articulated applicable standards).

causal relationship between that deviation and the plaintiff's injury." *Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009). In this case, the standard of care is "that of a reasonably prudent police officer." *Id.* To prove this standard of care, plaintiffs were required to submit expert testimony, because the standard is "beyond the ken" of the average juror. *Id.* (quoting *Etheredge v. District of Columbia*, 635 A.2d 908, 917 (D.C. 1993)). Plaintiffs have failed to produce any expert testimony to establish a standard of care, and therefore, Count VI will be dismissed.

## V.  MUNICIPAL LIABILITY (COUNT VIII)

Plaintiffs fail to respond to the District of Columbia's argument that it cannot be liable for negligent training and supervision resulting in a Fourth Amendment violation because plaintiffs have failed to produce evidence of a policy or custom resulting in the constitutional violation. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003). The Court will therefore treat Count VIII as conceded and grant defendants' motion for summary judgment.[18]

## VI.  PUNITIVE DAMAGES

Defendants finally argue that plaintiffs have failed to plead or demonstrate the "evil motive" or malice required to justify an award of punitive damages against the police officers under Count V. (Defs.' Mot. at 20.) Under District of Columbia law, "punitive damages are warranted only when the defendant commits a tortious act accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other

---

[18] As a result, defendants have no outstanding claims against the District of Columbia. The Court therefore finds it unnecessary to consider defendants' arguments that Franklin failed to satisfy the notice provision of D.C. Code § 12-309 or their arguments that punitive damages against the District are unavailable.

circumstances tending to aggravate the injury."[19] *Pitt v. District of Columbia*, 491 F.3d 494, 507-08 (D.C. Cir. 2007) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 657 (D.C. Cir. 2001)) (internal alterations omitted). Plaintiff must meet this standard with clear and convincing evidence, *Wood v. Neuman*, 979 A.2d 64, 73 (D.C. 2009), although the fact-finder "may infer the requisite state of mind from the surrounding circumstances." *Butera*, 235 F.3d at 657 (internal quotation marks omitted). Here, plaintiffs have arguably created genuine issues of material fact relating to the officers' intent, such that summary judgment would be inappropriate. Plaintiffs have introduced evidence that the officers entered Franklin's apartment, cut open his mattress and damaged his personal property (Franklin Dep. at 113), despite clear evidence that Franklin's apartment was unconnected to the subject of the search warrant and despite Franklin's own statements to the police that he was paying rent and was unaware of his neighbor's activities. Similarly, plaintiffs have introduced evidence that the police officers wantonly destroyed Smith's jewelry and antique crystal and china figurines during their search of her apartment. (Smith Dep. at 327, 375.) The Court cannot "conclude, as a matter of law," that these "actions were not sufficiently outrageous to warrant imposition of punitive damages." *Dingle v. District of Columbia*, 571 F. Supp. 2d 87, 100 (D.D.C. 2008). It will therefore deny defendants' motion to dismiss plaintiffs' request for punitive damages under Count V.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. No. 92) is granted in part and denied in part. The Court grants defendants' motion as to plaintiffs' claims

---

[19] Defendants have only cited the punitive damages standard under District law, and have not cited any case law or made any specific arguments against an award of punitive damages under § 1983. Even if they had, their argument would fail because the issue cannot be resolved here. Punitive damages against individuals in a § 1983 action are available if their conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). It would "not necessarily be unreasonable" for a jury to conclude that the officers' decision to search Franklin's apartment and detain him was recklessly indifferent to his constitutional rights. *See Qutb v. Ramsey*, 285 F. Supp. 2d 33, 52 (D.D.C. 2003).

under Counts I, II, IV, VI, and VIII.  The Court denies defendants' motion as to plaintiffs' claims

under Count V and as to plaintiffs' request for punitive damages.  The Court will grant

defendants' motion as to Smith's claim under Count III, but will deny defendants' motion as to

Franklin's claim under Count III.  The District will be dismissed with prejudice.  An Order

consistent with this Memorandum Opinion is also being issued this date.


                                        _____/s_____
                                        ELLEN SEGAL HUVELLE
                                         United States District Judge

Date:   April 27, 2011